UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYLE CHESWICK, individually and on behalf of all others similarly situated

Plaintiff,

v.

MITRA-9 BRANDS, LLC

Defendant.

1:25-CV-6795-LTS

MEMORANDUM OPINION AND ORDER

Plaintiff Lyle Cheswick ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Mitra-9 Brands, LLC ("Mitra-9" or "Defendant"). Plaintiff claims violations of the consumer protection statute New York General Business Law ("NY GBL") sections 349 and 350 (together, the "NY GBL claims"), as well as fraud by omission under New York state common law. Plaintiff's claims stem from Defendant's sale of seltzers, powders, and shots containing kratom, a plant-derived substance that affects the human body in a manner similar to opioids. The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1332(d).

Pending before the Court is Defendant's motion to dismiss the claims brought against it in the Complaint (docket entry no. 1 ("Complaint" or "Compl.")) under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket entry no. 7 ("Motion").) The Court has reviewed and carefully considered the parties' submissions (docket entry nos. 8 ("Memorandum of Law" or "Mem."), 11 ("Opposition" or "Opp."), and 18 ("Reply")). For the following reasons, Defendant's Motion is denied.

## I. BACKGROUND

The following facts are drawn from the Complaint and are presumed to be true for the purposes of this Motion to the extent that they are well-pleaded.

Plaintiff brings this putative class action lawsuit against Mitra-9 for "false, misleading, deceptive, and negligent sales practices regarding its kratom seltzers, powders, and shots (the 'Products')." (Compl. ¶ 1.)[1] Mitra-9 is a company that markets, sells, and distributes products that contain kratom, a substance derived from "the leaves of a tropical tree, mitagyna speciosa, indigenous to Southeast Asia, where it has been used in herbal medicine since the 19th Century." (Id. ¶¶ 5, 9.) Defendant sells kratom seltzers, shots, and powders all over the United States. (Id. ¶ 5.)

Defendant touts the "unique benefits" of its kratom Products, advertising them as "caffeine-free, non-alcoholic, low-calorie[]" "plant-based beverages" that "compliment[][sic] active lifestyles every day," "help [consumers] sail through [their] workday or support [their] post-workout routine," and "support[] overall vitality and well-being, fostering focus and a serene approach to life's challenges." (Id. ¶ 43.) Defendant advertises "the unique benefits of [its] kratom," which comes from "the verdant rainforests of Southeast Asia" and factors into their "specially designed formula." (Id.) This so-called "Mitra9 difference," says Defendant, is what makes the Products "an upgrade" from "ordinary supplement drinks" and a "perfect way to shake things up." (Id. ¶¶ 43, 45.)

What Defendant's advertisements and Product labels do not convey, however, are the health hazards and addictive risks associated with its Products. (See, e.g., id. ¶¶ 38, 42, 87,

---

[1] Plaintiff seeks to bring this suit on behalf of himself and "[a]ll persons in New York who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Mitra9 brand kratom products." (Compl. ¶ 60.)

101.) Kratom contains chemical compounds called alkaloids which, depending on the dose, can produce either stimulating or sedating effects. (Id. ¶ 16.) But alkaloids produce those effects by interacting with numerous receptors in the brain. (Id. ¶¶ 14-15.) Critically, this includes the brain's mu-opioid receptor, which is the receptor that "produces the most addictive or habit-forming effects." (Id. ¶ 16.) "[K]ratom works on the exact same opioid receptors in the human brain as morphine and its analogs, has similar effects as such, and critically, has a similar risk of physical addiction and dependency, with similar withdrawal symptoms" (id. ¶ 1), which has led health professionals to label kratom as a "quasi-opiate" (id. ¶ 18).

Kratom use carries a high risk of addiction. Like opioids, it produces pleasurable effects in the body, but repeat users can develop a tolerance that requires them to consume increasingly large doses to achieve the same effects, and their bodies become dependent on the substance to function normally. (Id. ¶¶ 20, 22.) As a result, sudden cessation of kratom use can produce severe, opioid-like withdrawal symptoms, including "irritability, anxiety, difficulty concentrating, depression, sleep disturbance, including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise." (Id. ¶ 21.)

The scientific community has long been aware of kratom's addictive potential and health hazards, but most United States consumers "do not know what kratom is and have no idea how addictive it is." (Id. ¶¶ 36-37.) Kratom is "widely available and unregulated within the United States" (id. ¶ 26), available online and over the counter at "herbal stores, gas stations, corner stores, smoke shops, and 'head' shops" (id. ¶ 12). Rather than educating consumers about the risks of kratom consumption, Defendant and other kratom companies advertise the "purported 'benefits' of kratom" (id. ¶ 27) without warning that "kratom is similar to an opioid,

is habit-forming, and that regular use will result in an opioid-like dependency with withdrawal symptoms" (id. ¶ 32). Defendant also employs packaging for its Mitra-9 Products that resembles that of commonplace products like "5-Hour Energy" shots and caffeinated energy drinks like "Redbull" and "Celsius." (Id. ¶¶ 44, 46.) As a result, "unsuspecting and uninformed" consumers of Mitra-9 Products frequently find themselves "blindsided when they stop taking kratom and find themselves facing severe withdrawal symptoms after having stopped what they thought was a harmless supplement." (Id. ¶¶ 28-29; see also id. ¶¶ 46-49.) Plaintiff is one such consumer: he initially purchased Mitra-9 Products as an "alternative for pain relief," but, after consuming them for several months, he began experiencing withdrawal symptoms including "cold sweats, anxiety, joint aches, extreme irritability, restless leg syndrome, and insomnia." (Id. ¶ 4.)

Plaintiff alleges not only that the concentration of kratom in Defendant's Products poses significant addiction risks (id. ¶¶ 38, 47, 49), but also that Defendant knew its Products were highly addictive yet failed to disclose their risks (e.g., id. ¶ 41). Plaintiff alleges upon information and belief that Defendant "interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom" (id. ¶ 39); that Defendant "has received numerous user reports about the addictive potential of kratom in the United States" (id. ¶ 40); and that Defendant possessed "studies regarding kratom addiction" (id. ¶ 97). "Despite this knowledge, Defendant failed to disclose the addictive potential of its Products on its website or anywhere on its Products' packaging." (Id. ¶ 42.) Defendant's alleged failure to disclose those risks forms the basis of the instant lawsuit.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. (citation omitted), but a complaint that contains only "naked assertion[s]" or "a formulaic recitation of the elements of a cause of action" does not suffice, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citation omitted).

Here, Defendant moves to dismiss both of Plaintiff's NY GBL claims and his common law fraud by omission claim. The Court will address each claim below.

### A. Counts I and II: NY GBL Sections 349 and 350

NY GBL section 349 prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce," and NY GBL section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce. . . ." N.Y. Gen. Bus. Law §§ 349, 350 (McKinney). Although "GBL § 350 is specific to false advertising, its standards are identical to those of § 349." Duchimaza v. Niagara Bottling, LLC, 619 F. Supp. 3d 395, 411 (S.D.N.Y. 2022). Thus, to state a claim under either section, Plaintiff must plausibly allege that "(1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." Sandoval v. Uphold HQ Inc., No. 1:21-CV-7579-LTS-BCM,

2025 WL 1268291, at *5 (S.D.N.Y. May 1, 2025) (quoting Denenberg131 v. Rosen, 897 N.Y.S.2d 391, 395 (App. Div., 1st Dep't 2010)). Defendant argues that Plaintiff has failed to plead the second and third elements—injury and deceptive practice. The Court will address Defendant's arguments in turn.

1. Injury

First, Defendant argues that Plaintiff failed to allege a cognizable injury. "An actual injury claim under [s]ection[s] 349 [and 350] typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020) (citation omitted) (alterations in original). A plaintiff may plead injury by alleging, inter alia, a "price premium," wherein "a plaintiff pays more than she would have but for the deceptive practice." Id.; see also Baron v. Pfizer, Inc., 840 N.Y.S.2d 445, 448 (N.Y. App. Div., 3d Dep't 2007).

Here, Plaintiff plausibly pleads that he suffered injury under a price premium theory. The Complaint alleges that Defendant failed to disclose the Products' addiction risks because Defendant "knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that they were safe to consume regularly and did not pose a serious risk of addiction." (Compl. ¶ 77.) The Complaint further alleges that Plaintiff and other class members "suffered economic injury because they . . . would have paid substantially less for [the Products], if they had known that the Products posed a serious risk for addiction." (Id. ¶¶ 80, 90; see also id. ¶ 79.) These allegations are logical, non-conclusory, and plausibly frame a cognizable price premium injury, namely that Plaintiff paid more than he otherwise

would have if Defendant had disclosed the true addiction risks its Products carried. See Duran, 450 F. Supp. 3d at 350.

Defendant's contrary arguments do not persuade the Court otherwise. Defendant argues that Plaintiff alleged "deception as both act and injury," rendering his injuries non-cognizable. (Mem. at 7-8.) The cases Defendant cites, however, are inapposite. Defendant references two cases, Small and Zottola, which involved NY GBL claims pertaining to cigarettes' addictiveness and a medication's cancer risks, respectively. Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999); Zottola v. Eisai Inc., 564 F. Supp. 3d 302, 310-11 (S.D.N.Y. 2021). In both cases, the key pleading deficiency was that the plaintiffs alleged only that they "never would have purchased" the relevant products had they possessed complete information about the products. Small, 720 N.E.2d at 898; see also Zottola, 564 F. Supp. 3d at 310. "Crucially," what was missing in both cases were allegations that "Defendants' alleged misrepresentations affected the [products'] price." Zottola, 564 F. Supp. 3d at 310-11. Unlike in those cases, the Complaint here is replete with allegations that the "price of the product was inflated as a result of defendant's deception," as explained above. See Baron, 840 N.Y.S.2d at 448.

2. Deceptive Practices

Defendant next argues that Plaintiff failed to adequately allege that Defendant engaged in a deceptive practice. To sufficiently plead an NY GBL deceptive practice, a plaintiff must "plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by an act or omission. Reyes v. Upfield US Inc., 694 F. Supp. 3d 408, 422 (S.D.N.Y. 2023) (quotations omitted). "Where, as here, the allegedly deceptive act involves an omission, the plaintiff must show that

'the business alone possesses material information that is relevant to the consumer and fails to provide this information,' or that the plaintiff could not 'reasonably have obtained the relevant information [he] now claim[s] the [defendant] failed to provide.'" Boateng v. BMW of N. Am., LLC, No. 24-2976-CV, 2025 WL 3134521, at *2 (2d Cir. Nov. 10, 2025) (alterations in original) (quoting Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995)).

Here, Defendant argues that Plaintiff failed to adequately connect his allegations of kratom's addiction risk to Defendant's own Products and instead relies on "an equivocation between 'kratom,' generically, and Mitra-9's products as formulated." (Mem. at 9.) In Defendant's view, the Complaint does not adequately show that "Mitra-9's Products are actually addictive as formulated," and thus does not plead a viable claim that Defendant engaged in a deceptive practice by failing to disclose kratom's generic addiction risks. (Id. at 9-10.)

Defendant's argument misses the mark. As a threshold matter, the Complaint need not allege exactly how addictive the Products are as formulated to claim a materially misleading omission. Under Plaintiff's price premium theory of injury, the fact that the Products contained an addictive compound is itself the material omission giving rise to a deceptive practice, irrespective of precisely how addictive that compound is. Nonetheless, the Court finds that Plaintiff has plausibly pleaded that the Products carry substantial addiction risks. Plaintiff alleges that the kratom in Defendant's Products carried a "serious potential for addiction" (Compl. ¶ 87) and produced opiate-like effects on the body (id. ¶ 101), and he alleges that the Products were "highly addictive" because they exposed consumers to "significant levels of addictive alkaloids" contained in kratom (id. ¶¶ 38-42). The Complaint presents further specific allegations regarding the serious withdrawal-like symptoms that Plaintiff experienced when

discontinuing use of Defendant's Products. (Id. ¶ 4.) Taken together, and when making all permissible inferences in Plaintiff's favor as required at this stage of litigation, these allegations are sufficient to connect Plaintiff's allegations of addiction risk to Mitra-9's Products "as formulated." (Contra Mem. at 8.)

Defendant next argues that Plaintiff failed to plead an actionable omission under NY GBL because omissions are actionable "only when 'the business alone possesses material information that is relevant to the consumer and fails to provide that information.'" (Mem. at 10 (emphasis in original) (citation omitted).) But Defendant recites only one half of the relevant legal standard: in addition, a plaintiff may also show a material omission by alleging that a consumer could not reasonably obtain the relevant information a defendant failed to provide, which is what Plaintiff alleges here. Boateng, 2025 WL 3134521, at *2. In his Opposition, Plaintiff asks the Court to follow the reasoning of a recent decision with nearly identical facts and legal theories—omission-based NY GBL claims brought against a different kratom company—in which the court rejected the same argument that Defendant makes here. (Opp. at 11 (citing J.J. v. Ashlynn Mktg. Grp., Inc., No. 24-CV-00311-GPC-MSB, 2025 WL 1811854 (S.D. Cal. July 1, 2025).) Though not binding, that Ashlynn decision merits careful consideration here.

In Ashlynn, the court found that the plaintiffs had sufficiently alleged a fraudulent omission that rendered the defendant's conduct materially misleading. Ashlynn Mktg. Grp., 2025 WL 1811854, at *14. In reaching that conclusion, the court considered, among other things, the public's general lack of familiarity with kratom, the fact that kratom was "marketed as providing benefits without disclosure of its addictive potential," the inaccessibility or incomprehensibility of the medical literature to an average consumer, and the unlikelihood that

consumers would inquire about kratom when "purchasing from third parties or online." Id. at *13. Taken together, these allegations give rise to a plausible inference that "consumers cannot reasonably obtain information about kratom's addictive potential before purchasing Defendant's kratom products." Id.

Here, the Complaint alleges factual circumstances nearly identical to those alleged in Ashlynn. Plaintiff asserts that the general public is unaware of kratom and that many consumers do not realize that kratom is addictive or potentially dangerous until they experience negative side effects or withdrawal. (Compl. ¶¶ 23, 37.) Because of kratom's relative obscurity, accurate information about its health risks is difficult to obtain. (Id. ¶ 33.) And, despite kratom's potential danger, kratom products are widely available and unregulated, commonly sold in gas stations and corner stores. (Id. ¶¶ 2, 26.) Defendant has made no efforts to educate consumers about kratom's potential risks, as its advertisements and packaging for the Products contain no health warnings at all. (Id. ¶¶ 4, 32.) To the contrary, Defendant's advertisements for the Products espouse kratom's potential benefits and employ language geared toward health-conscious consumers,[2] and the Products' packaging mimics that of well-known supplements like "5-Hour Energy" shots and caffeinated energy drinks like "Redbull" and "Celsius." (Id. ¶¶ 44, 46.)

Taken as true, these allegations plausibly plead a viable claim that Defendant's omission regarding kratom's addictiveness constituted a deceptive practice under NY GBL. The

---

[2] (Compl. ¶¶ 43 (identifying advertisements that market the Products as "caffeine-free, non-alcoholic, low calories, and naturally flavored"; describe kratom as "designed to complement your daily routine" by supporting "overall vitality and well-being"; and tout the "unique benefits" of Mitra-9 kratom), 45 ("Forget ordinary supplements[;] this unique blend of kratom and kava is the perfect way to shake things up."), 48 ("Nothing about this packaging would lead reasonable consumers to believe they were purchasing compounds similar to opioids[.]").)

general public knows little about kratom; accurate information about its risks is difficult to access; and kratom is largely unregulated yet widely available. Within this broader landscape, a reasonable consumer contemplating a purchase of Defendant's Products—which Defendant markets and packages as though they are innocuous health supplements—would have no reason to suspect or inquire whether they contained an opioid-like substance with serious addictive risks. Indeed, the Complaint alleges that, in many cases, it is not until after repeatedly purchasing and "becom[ing] unknowingly addicted to kratom" that many consumers, including Plaintiff, are "blindsided" or "shock[ed]" to discover its addictive potential. (Id. ¶¶ 29-30.) As in Ashlynn, the allegations here are sufficient to plausibly support a factual inference that a consumer could not reasonably obtain information about kratom's addictiveness before purchasing the Products. See 2025 WL 1811854, at *13.

Defendant does not persuade the Court otherwise. In its Reply, Defendant urges the Court to follow the reasoning set forth in Schuman v. Visa U.S.A., Inc., 788 F. Supp. 3d 563 (S.D.N.Y. 2025). (Reply at 7.) But the facts of that case are inapposite here. In Schuman, the court rejected the plaintiff's claim that Visa had engaged in deceptive practices by failing to warn customers that prepaid Visa debit cards were susceptible to scams by third-party fraudsters. Schuman, 788 F. Supp. 3d at 579. In Schuman, the court found that a reasonable consumer would have access to information about scam risks because those risks were widely known and widespread and because the cards' packaging contained multiple warnings about scams. Id. Here, however, Plaintiffs have alleged that the general public is largely unaware of kratom's addictive potential and that the Products' advertising and packaging fail to mention that risk, as explained above.

In sum, Plaintiff has pleaded viable NY GBL claims, so Defendant's motion to dismiss is denied as to Counts I and II.

B. Count III: Fraud by Omission

Defendant also seeks dismissal of Plaintiff's common law fraud-by-omission claim. To plead a viable claim of fraud-by-omission (also known as fraudulent concealment), Plaintiff must plausibly allege "(1) failure to discharge a duty to disclose [material information]; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." TVT Recs. v. Island Def Jam Music Grp., 412 F.3d 82, 90-91 (2d Cir. 2005); see also Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1108 (N.Y. 2011).[3] Here, Defendant argues that it had no duty to disclose; that Plaintiff failed to allege scienter; and that Plaintiff failed to allege reasonable reliance. The Court will consider each element in turn.

1. Duty to Disclose

Defendant first argues that Plaintiff failed to show that Defendant had a duty to disclose information about the Products' risk of kratom addiction.[4] As relevant here, the duty to disclose arises "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." TVT Recs., 412 F.3d at 91 (internal quotation omitted).

[3] Plaintiff also must plead allegations of fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. While Defendant recites this legal standard in its Memorandum of Law (Mem. at 12-13), it does not argue that Plaintiff failed to meet Rule 9(b)'s pleading requirements.

[4] Defendant's Memorandum of Law also includes a section arguing that Plaintiff failed to plead a material omission (Mem. at 12-13), but its arguments are substantially the same as its duty to disclose arguments regarding superior knowledge. As such, the Court addresses these arguments together.

Here, Plaintiff plausibly pleads facts showing that Defendant possessed superior knowledge that was not readily available to consumers. Plaintiff alleges that, "[a]s a kratom product manufacturer and distributor, Defendant occupied a position of superior knowledge to the average reasonable consumer, who likely knows next to nothing about kratom." (Compl. ¶ 54.) He also alleges upon information and belief that Defendant "has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to [Defendant]" and that Defendant has received "numerous user reports about the addictive potential of kratom." (Id. ¶¶ 39-40.) And for the same reasons the Court detailed above, Plaintiff has shown that this information was not reasonably, much less "readily," available to consumers. These allegations are sufficient to plead that Defendant possessed superior knowledge. See Ashlynn Mktg. Grp., 2025 WL 1811854, at *14 (finding that nearly identical allegations plausibly gave rise to an inference of superior knowledge); see also Colangelo v. Champion Petfoods USA, Inc., No. 6:18-CV-1228-LEK-ML, 2020 WL 777462, at *14 (N.D.N.Y. Feb. 18, 2020).

Defendant's contrary arguments are unpersuasive. Defendant repeatedly points to Plaintiff's allegation that the scientific community had reached a consensus that kratom is addictive, arguing that Defendant thus could not have had knowledge that consumers could not readily access. (Mem. at 13, 15.) But, as explained above, Plaintiff alleges that the general public is unaware of kratom and that the average consumer would find relevant scientific studies inaccessible or incomprehensible. Defendant also argues that Plaintiff failed to explain how a disclosure regarding kratom would be material to consumers, because kratom's health effects are concentration dependent. (Id. at 13.) But, as in the NY GBL context, regardless of exactly how addictive the Products are, the presence of significant levels of an addictive substance in the

Products is itself the "material fact" Plaintiff alleges "would influence the purchasing decision of reasonable consumers." (Compl. ¶ 98.)

Finally, Defendant argues that "Plaintiff does not allege that Mitra-9 knew consumers—including Plaintiff—would rely on any mistaken understanding of kratom's effects." (Mem. at 15.) This is inaccurate. The Complaint alleges that Defendant "knows that kratom is addictive" (Compl. ¶ 97) yet "relied upon the average consumer's incomplete knowledge of kratom to sell its Products and get users addicted to kratom" (id. ¶ 55). Plaintiff further alleges that Defendant "fails to disclose kratom's addictive potential because Defendant knows that it is a material fact to reasonable consumers which would influence their purchasing and consumption decisions, likely to Defendant's detriment." (Id. ¶ 57.) These allegations, along with many others in the Complaint, give rise to a plausible factual inference that Defendant knew that consumers were purchasing its Products based on mistaken or incomplete knowledge of kratom's addictiveness. See TVT Recs., 412 F.3d at 91.

In sum, for purposes of this motion practice, Plaintiff sufficiently pleads that Defendant had a duty to disclose the addictiveness of kratom and that it failed to fulfill that duty. The first element of Plaintiff's fraud-by-omission claim is satisfied.

2. Scienter and Reasonable Reliance

Defendant further contests the sufficiency of Plaintiff's allegations going to the second and third elements of a fraudulent concealment claim: scienter and reasonable reliance.

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (citation omitted). Defendant argues that the Complaint establishes that Defendant was aware that kratom is addictive in general but "fails to allege that Mitra-9 knew its Products were addictive as

formulated." (Mem. at 13.) Defendant mischaracterizes the Complaint. In fact, Plaintiff alleges that "Defendant knew or should have known that the Products it was selling were highly addictive" (Compl. ¶ 41) and substantiates that contention with multiple specific factual allegations. Plaintiff alleges that all of Defendant's Products contain kratom and are addictive as formulated[5] and that "Defendant knows that kratom is addictive because it interacts with kratom vendors, has been made aware of user reports, and is in possession of studies regarding kratom addiction and manufactures a wide variety of kratom products using different extraction methods." (Id. ¶ 97.) Taken together, these allegations plausibly give rise to an inference that Defendant knew its Products were addictive as formulated. Defendant's scienter arguments thus do not support dismissal.

Finally, Defendant argues that Plaintiff fails to plead facts showing reasonable reliance on Defendant's omission. The relevant inquiry regarding reasonable reliance on an omission is whether the plaintiff "has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation." Crigger v. Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006) (citation omitted). Defendant's only argument regarding reasonable reliance is that information about kratom's addictiveness is widely available, so a reasonable consumer would not have relied on Defendant's omissions. This argument fails for the reasons explained several times above.

In sum, Plaintiff had pleaded a viable fraud-by-omission claim. Defendant's motion to dismiss is denied with respect to Count III.

---

[5] (See Compl. ¶¶ 38 (Products expose consumers "to significant levels of addictive alkaloids"), 47 (Products "interact with opioid receptors," making them "highly addictive"), 49 (Products "carry the threat of an unreasonable health hazard").)

## III. Conclusion

For the foregoing reasons, Defendant's motion is denied in its entirety. This Memorandum Opinion and Order resolves docket entry no. 7. This case remains referred to Magistrate Judge Lehrburger for general pretrial management.

SO ORDERED.

Dated: New York, New York
September 30, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge